C. Gregg Thomas
PO Box 11718
Bozeman, MT 59719
303.503.8362

| UNITED STATE BANKRUPTCY COURT, DISTRICT OF MONTANA<br>BUTTE, MONTANA<br><br>Thomas, Christopher Gregg:<br>Debtor | ▲ COURT USE ONLY |
|---|---|
| | Case Number:<br><br>17-61231-13 |
| **MOTION TO DISQUALIFY COUNSEL** ||

COMES NOW, GREGG THOMAS ("Debtor Thomas"), requesting relief from this court by disqualifying counsel and firm with clients that have conflicting interests. Pursuant to the obligation set forth in DR 1-103(A), the Debtor hereby sets before this court certain facts, questions and evidence seeking a ruling on the motion; and, in accordance with Montana Rules of Professional conduct Rule 1.7 (a)(1),(2)&(3) the named counsel shall not represent these current clients; and finally, in order to expedite the case to a speedy resolution avoid unnecessary expense to the parties, and the court, the Debtor moves this court thusly.

On January 20th, 2018 debtor received a notice of appearance from attorney Harold Dye that he, and his firm, represent Clifton Bo Cleveland Abbott ("Bo Abbott"), as well as Cliff Abbott, Bo Abbott's father, and Scott Abbott, Bo Abbott's cousin-both of whom are also creditors of the Debtor and Bo Abbott as co-borrowers in revenue sharing agreements to produce Insurance commissions in certain geographic locations.

## BACKGROUND

1

Clifton Bo Cleveland Abbott ("Bo Abbott") was an employee and officer of the Debtor and Debtor's Insurance Agency. Bo Abbott initiated and led an expansion of the Agency in the states of Colorado, Oklahoma, Washington, Kansas, Idaho, Montana and Wyoming.

Bo Abbott began his employment on September 22nd, 2015 and voluntarily resigned on September 4th, 2017. The reasons for his resignation were set forth in his resignation letter and his separation agreement, attached as Exhibit "A" and incorporated herein for reference.

Bo Abbott is and at all relevant times has been a full-time resident of the State of Colorado; and, as of the writing of this motion, still lists himself as the CFO and Western Territory Manager of the agency on the popular job seeker website, "linkedin".

Cliff Abbott is a creditor of the Debtor, and the Debtor has listed that debt to be fully repaid in his chapter 13 plan. Scott Abbott is a creditor of the Debtor, and the Debtor has listed that debt to be fully repaid in his chapter 13 plan.

Bo Abbott is a co-debtor along with the Debtor on each of the loans made by Scott and Cliff Abbott. Bo Abbott solicited each of the loans, and Debtor guaranteed them along with Bo Abbott, though Debtor had never met the loan makers.

Debtor has listed Bo Abbott as a co-debtor to these loans in his chapter 13 petition schedules. The right to offset is also present, the amounts of which will be determined by this court in Adversary proceeding 18-00002.

Debtor filed a civil case in the Eighteenth district court of Montana, Gallatin County on December 7th, 2017. Debtor was in the process of serving Bo Abbott when he filed for Chapter 13 Bankruptcy protection in this court. Debtor removed that case to this court on January 25th, 2018.

This adversary case seeks to collect on damages caused by, through his own admissions, Bo Abbott, and among other things, of fraudulently misrepresenting the nature of and his participation in 5 personal credit card charges, totaling $16,500, he made while logged into his agent merchant account.

Between the dates of July 28th, 2017, and August 28th, 2017, Bo Abbott logged into his agent merchant account and made 5 charges totaling $16,500, using his own personal credit cards. The proceeds of which were used by Debtor and Bo Abbott to pay Bo Abbott's mortgage, Debtor's health insurance, Bo Abbott's employees, loans, rent and other necessary business expenses. Then, between the dates of September 12th and October 4th, 2017, Bo Abbott purposely Misrepresented to his credit card providers (Capital One Bank and Discover Card) that he, and his credit cards were not present at the time of the charges; that he did not authorize the charges; and, finally, that he did not know who made the charges.

The resulting chargebacks were taken from the Debtor. As a direct and proximate result, Debtor and Debtor's business immediately defaulted on almost all loans, leases, and contracts, causing the demise of the business – Bo Abbott's intent, through his admission and actions, was to cause the company to default on its obligations- including those to Cliff Abbott and Scott Abbott- in order to coerce the debtor into relieving Bo Abbott of certain obligations.

By and through his own admission, as well as admission to third party witnesses, Bo Abbott was trying to enrich himself while harming the Debtor.

2

Bo Abbott has, on several occasions and to several witnesses, admitted to, and the evidence overwhelmingly confirms, that he was not only present for the charges, and therefore did Authorize them, he made the charges from his own account.

This adversary proceeding also accuses Bo Abbott of using the Debtor's checking account to pay his personal bills without authorization, or after authorization was removed. Furthermore, Bo Abbott is accused of conspiring with others to coerce, extort, harass or otherwise manipulate the Debtor into releasing him from or transferring certain legal responsibilities away from himself and onto the Debtor. Without the existence of those acts by Bo Abbott, Debtor would likely not have been harmed, making his actions malicious and illegal.

Debtor is waiting for documents from the state of State of Montana, and the Debtor and third party witnesses have seen and can attest to, an illegally obtained title, registration, tag, bill of sale and falsified proof of Montana residency-for a vehicle owned by the Debtor, but titled in Clifton Bo Cleveland Abbott's name.

## PROOF OF NEED FOR DISQUALIFICATION OF COUNSEL'S REPRESENTATION OF SCOTT ABBOTT AND BO ABBOTT

Bo Abbott's position as a guarantor of a loan is an adverse position to that of the loan maker, Scott Abbott. The loan documentation is attached here as Exhibit "B" and incorporated herein for reference.

Debtor's position to continue repayment of the loan through his Chapter 13 plan make Scott Abbott's position adverse to Bo Abbott and the Debtor, who are equally responsible for making the loan payments and eventual repayment of the principle.

To the extent this court determines Bo Abbott's actions contributed to the Debtor's business loan defaults and need for Federal Protection from his creditors, his position is diametrically opposed to any of those creditors affected by his actions; and,

Furthermore, any collection or dissemination of evidence between the parties may reveal other conflicting interests of the parties.

FOR THE FOREGOING REASONS AND OTHERS LIKELY TO BE DISCOVERED, Counsel will have to choose where his professional loyalties lie when advising these clients. There are irreconcilable conflicts of interest; and, the attorney must refuse representation of third party Scott Abbott and Bo Abbott.

## PROOF OF NEED FOR DISQUALIFICATION OF COUNSEL'S REPRESENTATION OF CLIFF ABBOTT AND BO ABBOTT

Bo Abbott's position as a guarantor of a loan is an adverse position to that of the loan maker, Cliff Abbott.

Bo Abbott's receipt and direct and or indirect Benefit of the loan proceeds, as well as the relief sought by him from the Debtor to avoid future loan payments to the creditor make his interest adverse to that of Cliff Abbott and the collection of those funds.

Debtor's position to continue repayment of the loan through his Chapter 13 plan make Cliff Abbott's position adverse to Bo Abbott and the Debtor, who are equally responsible for making the loan payments and eventual repayment of the principle.

3

Debtor's position to continue repayment of the loan through his Chapter 13 plan make Cliff Abbott's position adverse to Bo Abbott and the Debtor, who are equally responsible for making the loan payments and eventual repayment of the principle.

To the extent this court determines Bo Abbott's actions contributed to the Debtor's business loan defaults and need for Federal Protection from his creditors, his position is diametrically opposed to any of those creditors affected by his actions; and,

Furthermore, any collection or dissemination of evidence between the parties may reveal other conflicting interests of the parties.

FOR THE FOREGOING REASONS AND OTHERS LIKELY TO BE DISCOVERED, Counsel will have to choose where his professional loyalties lie when advising these clients. There are irreconcilable conflicts of interest; and, the attorney must refuse representation of third party Cliff Abbott and Bo Abbott.

## DISCUSSION

IN RE MARRA, the Montana Supreme court, in the committee's decision, cited the necessity for attorneys' need for fostering loyalty with their clients in the following discussion:

> ¶ 7 Rule 1.7 requires lawyers to foster and protect client loyalty. Grievance Committee of Bar v. Rottner (1964), 152 Conn. 59, 203 A.2d 82, 84-85. "Loyalty is an essential element in the lawyer's relationship to a client." Rule 1.7, Comment 1, Model Rules of Professional Conduct (2001). "The duty of loyalty is 'perhaps the most basic of counsel's duties.'" State v. Jones (1996), 278 Mont. 121, 125, 923 P.2d 560, 563 (quoting Strickland v. Washington (1984), 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674). One commentator expressed this duty thusly:
> The reasons for the basic rigor of Rule 1.7(a) are readily discernable. It is intuitively obvious that parties with conflicting interests who are concurrently represented by the same lawyer face significant risks that the lawyer will act disloyally to one client or the other, or that confidential information concerning one client will be leaked to the other....
> ....
> When Rule 1.7(a) applies, it commands that a lawyer not represent the clients in question. This means that a lawyer must not accept a second client if the directly adverse conflict is known in advance, and must withdraw if the conflict is discovered after the concurrent representation has been undertaken[1],[2].

This court will be asked to rule on the disposition of, and even existence of debts, offsetting and otherwise, between all the parties. This court will also rule on the existence of conspiracy to the detriment of the Debtor by the parties, resulting in cross claims among the Bo Abbotts. If the court does not split them now, the attorney, Dye, will have moved forward with the knowledge that his clients are adverse to one another.

Judge Jeremiah Lynch, in Stimson Lumber v. International Paper[3], stated:

---

[1] LEAGLE. No 02-147 87 P.3d 384 (2004)

[2] Geoffrey C Hazard., Jr. & W. William Hodes, The law of lawyering § 11.3 (3rd edition 2003) (hereafter "hazard")

[3] CV 10-79-M-DWM-JCL, January 14th, 2011

4

The purpose of these disqualification rules is to protect and enhance the professional relationship between an attorney and a client. Trone v. Smith, 621 F.2d 994, 998 (9th Cir. 1980). The most important aspect of that relationship served by these rules "is the preservation of secrets and confidences communicated to the lawyer by the client." Id.

This case has and will continue to produce evidence of adverse interests among Mr. Dye's clients, making the preservation of the "secrets and confidences" of Mr. Dye's clients at risk of being revealed, detrimentally, to one or the other.

WHEREFORE, Debtor respectfully requests this court disqualify opposing counsel.

## NOTICE OF OPPORTUNITY TO RESPOND AND REQUEST A HEARING

**If you object to the motion, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion. The responding party shall schedule the hearing on the motion at least twenty-one (21) days after the date of the response and request for hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:**

### NOTICE OF HEARING
Date: _____
Time: _____
Location: _____

**If no objections are timely filed, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted.**

Dated: January 31st, 2018

Christopher Gregg Thomas
PO Box 11718
Bozeman, MT 59719

Certificate of Service

I, Gregg Thomas, hereby certify that on the 31st day of January 2018, I mailed, via USPS first class mail postage prepaid, a true and exact copy of the attachments herein filed in the United State Bankruptcy Court, District for Montana:

Clifton Bo Cleveland Abbott
15316 W 94th Avenue
Arvada, CO 80007

Harold V Dye
120 Hickory Street
Suite B
Missoula, MT 59801

Scott Abbott
350 donkey lane
Ft. Gibson OK 74434

Abbott Construction/ Cliff Abbott
406 S Webster
Liberal, KS 67901

*[signature]*

C. Gregg Thomas
PO Box 11718
Bozeman, MT 59719

Resignation Letter — Prospect (All Mail)

**Bo Abbott**
Resignation Letter
To:

September 4, 2017 at 10:29 AM

Siri found updated contact info in th

Resignation Letter.docx    Open with Microsoft Word

SEE ATTACHED

**Bo Abbott**
Superior Agencies
Home, Auto, & Business Insurance
MBA, 2012
(303) 800-3510



Resignation
Letter.docx

Bo Abbott
15316 W 94th Ave
Arvada, CO 80007
620.655.4960

Prospect Agency Group
PO BOX 10128
Bozeman, MT 59719
303.800.3510

To the Board of DirectorA,

Please accept this letter of resignation from both my position on the board of directors and as the Chief Financial Officer of the company. I am no longer able to perform my duties to the utmost of my ability for the betterment of the company, and therefore it is time for me to relinquish my position so that the company may continue and flourish under a more capable suitor.

I would like to thank all board members, shareholders and colleagues for the support, work ethic and dedication during my tenure. I wish the company the best of luck and it is my deepest desire that Prospect is successful in the future.

Sincerely,

Bo Abbott

Doc — Prospect (All Mail)

**Bo Abbott**
Doc
To:

SEE ATTACHED

**Bo Abbott**

B.S. EXSS, 2011
M.B.A. 2012
(620) 655-4960
boabbott89@gmail.com



Resignation Agreement.docx    Open with Microsoft Word

### Resignation Agreement

**Abbott Indemnification of Prospect and Thomas.** For and in consideration of the terms of this agreement and other good and valuable consideration Bo Abbott (Abbott) releases, acquits and forever discharges Prospect Agency Group (Prospect) and Gregg Thomas (Thomas) and their respective heirs, assigns, officers, directors, attorneys, employees, and agents from any and all claims, actions, causes of actions, charges, demands, losses, fees and any other damages of every kind, nature and description whatsoever that the parties ever had, or now has, for, by reason of, or growing out of any matter, thing or occurrence from the beginning of time until the date of this agreement. The foregoing release shall not discharge, or release, the obligations of this agreement.

**Prospect and Thomas Indemnification of Abbott.** For and in consideration of the terms of this agreement and other good and valuable consideration Prospect and Thomas releases, acquits and forever discharges Abbott and their respective heirs, assigns, officers, directors, attorneys, employees, and agents from any and all claims, actions, causes of actions, charges, demands, losses, fees and any other damages of every kind, nature and description whatsoever that the parties ever had, or now has, for, by reason of, or growing out of any matter, thing or occurrence from the beginning of time until the date of this agreement. The foregoing release shall not discharge, or release, the obligations of this agreement.

**Mutual Non-Disparagement.** For the purposes of mutual benefit, the following statement will be the official statement used by the parties to explain Abbott's departure. Due to the company's younger team member's commission chargebacks; limitations of the existing management system; lower than expected earned commissions, due to the foregoing; the company was forced to take on short term debt, as a result Abbott felt compelled to make the best decision for the company and his family is to seek income elsewhere to ensure the survival of both. Parties recognize this may or may not be a permanent solution.

1. Prospect and Thomas agree to pay and indemnify Abbott against the following agreements:
    a. Lease of 2049 Wadsworth Ste C Lakewood, CO 80214
    b. Debt to Patrick Ridens
        i. $100,000 loan
    c. Debt to Scott Abbott
        i. $40,000 loan
    d. Debts to Cliff Abbott
        i. $80,000 loan
            1. The original agreement between Abbott and Thomas in November 2016 through April 2017 is hereby nullified and replaced with the agreement put in place in May of 2017 that pays Cliff Abbott 5% of production from the states of Montana and Washington above and beyond until the $80,000 principle is returned.
    e. Transfer of Company Credit Cards from Abbott to Prospect and Thomas or agree to reimburse Bo Abbott for payment of balances; reimbursement payments may be made over time as agreed upon in a separate written agreement, and as determined by the card issuers' policies.
        i. American Express Business account
        ii. Chase Ink Business account
        iii. Capital One Venture Business account
    f. Repayment of personal funds given to Prospect by Abbott; reimbursement payments may be made over time as agreed upon in a separate written agreement
        i. $16,500 less 2, 4, and 5
    g. Chevy Tahoe along with auto loan
        i. Prospect and Thomas agree to remove Abbott from title and loan within six months of this agreement

# Resignation Agreement

**Abbott Indemnification of Prospect and Thomas.** For and in consideration of the terms of this agreement and other good and valuable consideration Bo Abbott (Abbott) releases, acquits and forever discharges Prospect Agency Group (Prospect) and Gregg Thomas (Thomas) and their respective heirs, assigns, officers, directors, attorneys, employees, and agents from any and all claims, actions, causes of actions, charges, demands, losses, fees and any other damages of every kind, nature and description whatsoever that the parties ever had, or now has, for, by reason of, or growing out of any matter, thing or occurrence from the beginning of time until the date of this agreement. The foregoing release shall not discharge, or release, the obligations of this agreement.

**Prospect and Thomas Indemnification of Abbott.** For and in consideration of the terms of this agreement and other good and valuable consideration Prospect and Thomas releases, acquits and forever discharges Abbott and their respective heirs, assigns, officers, directors, attorneys, employees, and agents from any and all claims, actions, causes of actions, charges, demands, losses, fees and any other damages of every kind, nature and description whatsoever that the parties ever had, or now has, for, by reason of, or growing out of any matter, thing or occurrence from the beginning of time until the date of this agreement. The foregoing release shall not discharge, or release, the obligations of this agreement.

**Mutual Non-Disparagement.** For the purposes of mutual benefit, the following statement will be the official statement used by the parties to explain Abbott's departure. Due to the company's younger team member's commission chargebacks; limitations of the existing management system; lower than expected earned commissions, due to the foregoing; the company was forced to take on short term debt, as a result Abbott felt compelled to make the best decision for the company and his family is to seek income elsewhere to ensure the survival of both. Parties recognize this may or may not be a permanent solution.

1. Prospect and Thomas agree to pay and indemnify Abbott against the following agreements:
    a. Lease of 2049 Wadsworth Ste C Lakewood, CO 80214
    b. Debt to Patrick Ridens
        i. $100,000 loan
    c. Debt to Scott Abbott
        i. $40,000 loan
    d. Debts to Cliff Abbott
        i. $80,000 loan
            1. The original agreement between Abbott and Thomas in November 2016 through April 2017 is hereby nullified and replaced with the agreement put in place in May of 2017 that pays Cliff Abbott 5% of production from the states of Montana and Washington above and beyond until the $80,000 principle is returned.
    e. Transfer of Company Credit Cards from Abbott to Prospect and Thomas or agree to reimburse Bo Abbott for payment of balances; reimbursement payments may be made over time as agreed upon in a separate written agreement, and as determined by the card issuers' policies.
        i. American Express Business account
        ii. Chase Ink Business account
        iii. Capital One Venture Business account
    f. Repayment of personal funds given to Prospect by Abbott; reimbursement payments may be made over time as agreed upon in a separate written agreement
        i. $16,500 less 2, 4, and 5
    g. Chevy Tahoe along with auto loan
        i. Prospect and Thomas agree to remove Abbott from title and loan within six months of this agreement
    h. Nissan 3500 van along with auto loan

- i. Prospect and Thomas agree to remove Abbott from title and loan within six months of this agreement
- i. All shares of Prospect Agency Group owned by Abbott will be transferred back to the company upon repayment of personal funds given to the company by Abbott
2. Prospect and Thomas agree to transfer title of Dodge Caliber back to Abbott within 4 months of signing this agreement; while Abbott agrees to remove $2,000 from total of $16,500 of personal funds given to Prospect.
3. iPhone 6S with phone number 620-655-4960
    a. Abbott agrees to transfer company phone and remainder of contract and pay for all costs and penalties
4. Abbott agrees to go through complete uninstall and reinstall of Windows for HP Laptop with Prospect CIO, Connor Glynn, and deduct $300 from total $16,500 of personal funds given to Prospect.
5. Abbott agrees to removed $4,717 from total of $16,500 of personal funds given to Prospect for home air conditioning unit purchased by Prospect.

Prospect Agency Group; Gregg Thomas

Gregg Thomas

Bo Abbott

Date 9/6/17

Date 9/6/17

Date

Exhibit B

## AGREEMENT FOR MUTUAL BUSINESS INTEREST AND REVENUE SHARING

(hereinafter the "Agreement") is made and entered into this the 22nd day of November, 2016 (the "effective date"), by and between Clifton Bo Cleveland Abbott and Christopher Gregg Thomas ("Agents") and W. Scott Abbott and Jill J. Abbott as successor ("Abbotts")

### PREAMBLE

**WHEREAS**, for purposes of this Agreement, the Agents and Abbotts shall be collectively referred to as the Parties (the "Parties");

**WHEREAS**, the Agents opened an office in and around Denver, Colorado on September 22, 2015;

**WHEREAS**, The Agents desire to open a second location, a retail office;

**WHEREAS**, the Parties desire to enter into a revenue sharing agreement with the Agents' new office location

**WHEREAS**, The Agents understand the need for all of Abbotts' money to remain in and invested into the retail office located in the state of Colorado;

**NOW, THEREFORE**, in consideration of the promises and covenants contained herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties, agree to incorporate the terms, statements, and definitions of the above Preamble into this Agreement, and further agree as follows:

1. **Details of Agreement.** The Agents agree to open and occupy an office location at 2049 Wadsworth Blvd, Unit C, Lakewood, CO 80241 within 60 days of the effective date of this agreement. The Agents further agree to lease, furnish and operate the office location as an independent insurance agency and to sell insurance policies from this office.

   The agents agree to pay Abbotts, on or before the 25th of each month, 5% of the gross operating revenue from the previous month. Gross operating revenue is defined as all income into the office minus customer insurance premiums held in trust for the carriers. The Agents agree to continue paying 5% of the gross operating revenue to Abbotts until Abbotts is repaid Forty Thousand Dollars ($40,000.00) by the Agents separate and above the 5% monthly payment.

   As soon as is practicable after the effective date of this agreement. Abbotts will deposit Forty Thousand Dollars ($40,000.00) into the Agents' operating account at Wells Fargo Bank (Account #:17712662464)

   The Agents agree to provide a security interest in the office location, its furnishings, assets, and bank accounts. A copy of Universal Commercial Code ("UCC-1") filing is attached hereto. Abbotts agree to release the UCC-1 filing within a reasonable time of the Agents returning Forty Thousand Dollars ($40,000.00).

Exhibit B

2. **Authority**. All Parties to this Agreement represent and warrant that they have taken all actions and obtained all authorizations, consents, and approvals that are conditions precedent to their authority to execute this Agreement.

3. **Notices**. All parties will notify each other by the following means:

   W Scott Abbott
   and/ or Jill J Abbott
   350 Donkey Lane
   Ft. Gibson, OK 74434

   Clifton Bo Cleveland Abbott
   15316 W. 94th Ave
   Arvada, CO 80007

   Christopher Gregg Thomas
   PO Box 11718
   Bozeman, MT 59719

4. **Consultation with Counsel**. The Parties acknowledge that each of them has read the full contents of this Agreement, understands that this Agreement constitutes a contract, represents that they have consulted with counsel regarding the advisability of entering into this Agreement and enters into this Agreement voluntarily.

5. **Controlling Law**. This Agreement shall be governing by and be construed in accordance with the laws of the State of Colorado as they apply to contracts made and to be wholly performed in this state. The Parties consent to the jurisdiction of the state or federal courts of Colorado as the exclusive venue to resolve any dispute which might arise in connection with this Agreement.

6. **Titles, Headings, and Captions**. All titles, headings, and captions in this Agreement are intended for administrative convenience only and do not constitute matters to be construed in interpreting this Agreement.

[SIGNATURES ON NEXT PAGE]

61

Exhibit B

IN WITNESS WHEREOF, after having read this Agreement, and consulted with counsel, the Parties hereto set their hands and seals the day and year first written above and agree to its terms:

THE PARTIES:

By :_____
W. Scott Abbott

By:_____
Clifton Bo Cleveland Abbott

By:_____
Christopher Gregg Thomas